DRAKE, Respondent, v. FARMERS MUTUAL AUTOMOBILE INSURANCE COMPANY and others, Appellants. [Case No. 82.]*

HOLEWINSKI, by Guardian *ad litem,* and another, Appellants, v. DRAKE and another, Respondents. [Case No. 83.]*

*November 26—December 20, 1963.*

* For disposition on motion for rehearing see post, p. 66a.

58

60

For the appellants there was a brief by *H. E. Koehler* of Shawano, and *Burns & Lubinski* of Seymour, and oral argument by *Mr. Koehler* and *Mr. Michael Burns*.

For the respondents there was a brief by *Benton, Bosser, Fulton, Menn & Nehs* of Appleton, and oral argument by *David L. Fulton.*

WILKIE, J. The principal issue on this appeal is whether there is any credible evidence to sustain a jury determination that Drake was negligent in respect to speed and consequently forfeited his directional right-of-way.

The trial court found both parties negligent with respect to lookout as a matter of law. This finding is amply supported by the evidence. Miss Holewinski testified that when she entered the intersection traveling at a speed of five miles per hour, she saw Drake's car at the crest of the hill to the north, 450 feet from the intersection. Since Miss Holewinski traveled a distance of only five feet, five inches, at five miles per hour before the collision, Drake would have had to have been traveling at a speed of 288 miles per hour to reach the point of impact, if he had been at the crest of the knoll when Miss Holewinski entered the intersection. If Miss Holewinski did look to her right upon entering the intersection, she obviously did not see what was in full view. She failed to discharge her duty of lookout as a matter of law. [1]

Drake testified that when he was about 25 feet north of the intersection, traveling at a speed of 20 to 25 miles per hour, he looked to his left and saw no approaching vehicle. Assuming that at this point Miss Holewinski was behind the knoll located 500 feet east of the intersection, she would have had to have been traveling at a speed of 156 miles per hour to reach the point of collision simultaneously with Drake, given his testimony as to his speed and distance from the intersection. Clearly, Drake was negligent as to lookout as a matter of law.

[1] *Lind v. Lund* (1954), 266 Wis. 232, 63 N. W. (2d) 313.

In addition to faulty lookout on the part of both drivers, the trial court considered whether the provisions of sec. 346.18 (1), Stats., applied in these circumstances. Under that section,[2] if two vehicles approach an uncontrolled right-angle intersection at approximately the same time, the respective rights and duties are wholly controlled by the provisions of the section. Vehicles are deemed to be entering an intersection at "approximately the same time" if, at a given point in time, there is an "imminent hazard of a collision if both continued the same course at the same speed."[3]

Because neither party testified that they altered their speeds upon observing the other party approaching the intersection, although each party had an unobstructed view of approaching traffic for a distance of over 400 feet, and because the collision occurred at the west edge of the northeast quadrant of the intersection, it necessarily follows that at several points in time immediately prior to the collision, there was an imminent hazard of such a collision, if the parties continued at their same course of speed. Hence we must look to the provisions of sec. 346.18 (1), Stats., to determine the rights and duties of these parties.

The trial court reasoned that given the provisions of sec. 346.18 (1), Stats., Miss Holewinski, as the left-hand driver,

[2] "346.18 GENERAL RULES OF RIGHT OF WAY. (1) *General rule at intersections*. Except as otherwise expressly provided in this section or in s. 346.19 or 346.20, when 2 vehicles approach or enter an intersection at approximately the same time, the operator of the vehicle on the left shall yield the right of way to the vehicle on the right. The operator of any vehicle driving at an unlawful speed forfeits any right of way which he would otherwise have under this subsection."

[3] *Vogel v. Vetting* (1953), 265 Wis. 19, 26, 60 N. W. (2d) 399; *Nessler v. Nowicki* (1961), 12 Wis. (2d) 421, 107 N. W. (2d) 616.

was negligent *per se* for failing to yield the right-of-way, unless Drake forfeited his right-of-way by traveling at an unlawful speed. Finding no credible evidence to support a determination that Drake's speed was unlawful, the court concluded that her two items of negligent conduct compared with one item of negligence on the part of Drake, justified a determination as a matter of law, that she was at least as negligent as he.

Thus, our key inquiry must be as to whether the trial court was correct in finding no credible evidence of unlawful speed on the part of Drake. A preliminary consideration must be to define at what speed Drake would have to be traveling under the circumstances to forfeit his right-of-way.

The fact that Drake may have been driving at a speed less than the statutory or ordinance limit, does not necessarily mean that his speed was lawful. In *Johnson v. Fireman's Fund Indemnity Co.*[4] we held that a jury could reasonably find that a right-hand driver forfeited the right-of-way by reason of an unlawful speed by traveling at a speed less than statutory or ordinance limit when the streets were covered with packed, slippery snow. In determining the meaning of "unlawful speed" in sec. 346.18 (1), Stats., we may look to the generic legislative standard for reasonable speed, set forth in sec. 346.57 (2) and sec. 346.57 (3).[5]

---

[4] (1953), 264 Wis. 358, 360, 59 N. W. (2d) 660.

[5] "346.57 (2) *Reasonable and prudent limit.* No person shall drive a vehicle at a speed greater than is reasonable and prudent under the conditions and having regard for the actual and potential hazards then existing. The speed of a vehicle shall be so controlled as may be necessary to avoid colliding with any object, person, vehicle or other conveyance on or entering the highway in compliance with legal requirements and using due care.

"(3) *Conditions requiring reduced speed.* The operator of every vehicle shall, consistent with the requirements of sub. (2), drive at

All drivers approaching an intersection must drive at an appropriate, reduced speed in response to the actual and *potential* hazards then existing.

What is the standard for determining whether a right-hand driver approaching an uncontrolled intersection is traveling at an appropriately reduced speed in the light of actual or potential hazards? We have often held that the right-of-way is not an absolute license to the right-hand driver to proceed through an intersection unconcerned with the conduct of the left-hand driver. The right-hand driver has the general duty to operate his vehicle with due care to avoid a collision.[6] With respect to speed, the right-hand driver must reduce his speed, upon approaching an intersection, to a point where he can bring his vehicle to a stop short of a point of collision, if the left-hand driver fails to yield the right-of-way, the potential hazard which is always present when two vehicles approach an intersection at approximately the same time. Appropriately reduced speed on the part of the right-hand driver is dependent upon careful maintenance of lookout. The right-hand driver must adjust his speed in response to the conduct of the left-hand driver. Therefore, no specific rate of speed can be deemed lawful or unlawful within the meaning of "unlawful speed" in sec. 346.18 (1), Stats. The appropriately reduced speed, that speed which enables the driver to bring his car to a stop short of the point of collision if the left-hand driver fails to yield

an appropriate reduced speed when approaching and crossing an intersection or railway grade crossing, when approaching and going around a curve, when approaching a hillcrest, when traveling upon any narrow or winding roadway, when passing school children, highway construction or maintenance workers or other pedestrians, and when special hazard exists with regard to other traffic or by reason of weather or highway conditions."

[6] *Nessler v. Nowicki, supra; Lind v. Lund, supra; Johnson v. Fireman's Fund Indemnity Co., supra; Hamm v. Miller* (1949), 256 Wis. 192, 40 N. W. (2d) 387.

the right-of-way, will be relative to the right-hand driver's distance from the intersection, and the speed and distance from the intersection of the left-hand driver. Assuming that the right-hand driver is negligent as to speed, under the above standard, his forfeiture does not pass the right-of-way on to the left-hand driver. If the left-hand driver does not yield to the right-hand driver when the vehicles approach the intersection at approximately the same time, he shall be deemed negligent with respect to management and control as a matter of law.[7]

Applying the speed standard to the facts of this case, a jury could reasonably find that Drake was operating his vehicle at a speed which would not enable him to stop short of the point of collision, if Miss Holewinski failed to yield the right-of-way.

Drake testified that when he was 25 feet north of the intersection and traveling at a speed of 20 to 25 miles per hour, he looked to his left. We have already seen that, had he maintained proper lookout, he would have seen Miss Holewinski. Because the accident did occur in the intersection, we know that at this point, when Drake was 25 feet north of the intersection, her relative speed and distance from the intersection were such that it would be apparent to an observant right-hand driver that, if she continued her course and failed to yield the right-of-way, a collision would occur. If Drake had fully applied his brakes at that point, his total stopping distance would have been 47 feet, according to the speed and stopping distance ratio charts contained in the 1963 Wisconsin Manual for Motorists, which chart we may judicially note.[8] Because the collision occurred 33 feet from the point at which he testified that he looked to his left, the jury could conclude that a speed of 20 miles per

[7] *Granger v. Mutual Service Casualty Ins. Co.* (1963), 19 Wis. (2d) 302, 120 N. W. (2d) 140.

[8] *Mainz v. Lund* (1963), 18 Wis. (2d) 633, 119 N. W. (2d) 334.

hour at a distance of 25 feet north of the intersection was unlawful under the circumstances, because at that speed he was unable to stop his vehicle short of the point of collision when Miss Holewinski moved into the intersection.

Therefore, the jury could have found Miss Holewinski negligent in respect to management and control for moving into the intersection when the Drake car arrived at approximately the same time,[9] and could have found Drake negligent in respect to speed, in addition to finding both parties negligent as to lookout as a matter of law pursuant to the trial court's instruction. Upon such findings, the distribution of causal negligence in favor of the appellant was within the range of reasonable apportionment.

Accordingly, the judgment in the Holewinski case must be reversed, and the order in the Drake case set aside, and judgment for the appellants must be entered on the verdict.

*By the Court.*—Judgment reversed in Case No. 83, and cause remanded for the reinstatement of the jury verdict and the entry of judgment based thereon in favor of the appellants; order reversed in Case No. 82, and cause remanded for entry of judgment dismissing the complaint of Drake.

FAIRCHILD, J. (*concurring in part; dissenting in part*). I concur in dismissing the Drake complaint in Case No. 82. I respectfully dissent from reversal in Case No. 83 and would affirm dismissal of the Holewinski complaint. I consider this situation one of the very rare ones in which the court should conclude as a matter of law that there is no basis for finding either party less negligent than the other. Each driver proceeded with total blindness as to the other, and neither had any excuse nor the benefit of any mitigating circumstances.

I am authorized to state that Mr. Justice CURRIE joins in this opinion.

---

[9] *Granger v. Mutual Service Casualty Ins. Co., supra.*

The following opinion was filed May 1, 1964:

PER CURIAM (*on motion for rehearing*). The briefs on motion for rehearing have convinced the court that certain portions of the opinion erroneously stated the applicable law as to the determination of "unlawful speed" on the part of a right-hand driver, which will result in the forfeiture of his directional right-of-way as provided by sec. 346.18 (1), Stats. Accordingly, we withdraw the last six paragraphs of the opinion and the mandate, and substitute the following therefor:

What is the standard for determining whether a right-hand driver approaching an uncontrolled intersection is traveling at an appropriately reduced speed in the light of actual or potential hazards? We have often held that the right-of-way is not an absolute license to the right-hand driver to proceed through an intersection, unconcerned with the conduct of the left-hand driver. The right-hand driver has the general duty to operate his vehicle with due care to avoid a collision.[1]

With respect to speed, the right-hand driver, when approaching and crossing an intersection must, as prescribed by the quoted sec. 346.57 (2) and (3), Stats., "drive at an appropriate reduced speed." What may be an "appropriate reduced speed" in one case may well differ from another and the determination in each case must be made by the trier of fact based on the factual circumstances present in that case. No specific rate of speed can be deemed lawful or unlawful within the meaning of "unlawful speed" in sec. 346.18 (1), or of "appropriate reduced speed" in sec. 346.57 (3).

Applying the speed standard to the facts of this case, we concur with the trial court that there was no credible evidence

[1] *Lind v. Lund* (1954), 266 Wis. 232, 63 N. W. (2d) 313; *Johnson v. Fireman's Fund Indemnity Co.* (1953), 264 Wis. 358, 59 N. W. (2d) 660; *Hamm v. Miller* (1949), 256 Wis. 192, 40 N. W. (2d) 387.

on the basis of which a jury could reasonably find that Drake was not operating his vehicle at an appropriately reduced speed when he approached and crossed the intersection.

The only credible evidence in the record as to Drake's speed was Drake's own testimony. He testified that when he was 25 feet north of the intersection he was traveling about 20 to 25 miles per hour. Taking into account the nature of the intersection (at right angles and essentially level), the surface of the road (hard-top), the unobstructed view of the other road that Drake had from the crest of the hill located on his road about 450 feet from the intersection, there is no reasonable basis on which the jury could find "unlawful speed" on the part of Drake. Accordingly, the trial court was correct both in the instructions given to the jury on the question of Drake's speed and in its conclusion that there was no evidence of unlawful speed on the part of Drake.

Both drivers were negligent as to lookout and Miss Holewinski was also negligent in failing to yield the directional right-of-way to Drake. We now pass to a consideration of the apportionment of negligence between the two drivers.

Under the circumstances of this case, we must conclude as a matter of law that there is no basis for finding either party less negligent than the other. Each driver proceeded with total blindness as to the other and neither had any excuse nor the benefit of any mitigating circumstances. Although this court is particularly loath to overturn a jury on the comparison of negligence between a plaintiff and a defendant,[2] this is a situation where the jury apportionment should not stand.[3]

---

[2] *Davis v. Skille* (1961), 12 Wis. (2d) 482, 489, 107 N. W. (2d) 458.

[3] *Home Fire & Marine Ins. Co. v. Farmers Mut. Automobile Ins. Co.* (1956), 274 Wis. 210, 214, 215, 79 N. W. (2d) 834.

Accordingly, the judgment in the *Holewinski Case* must be affirmed, and the order in the *Drake Case* set aside and judgment entered in that case dismissing the Drake complaint.

Judgment affirmed in Case No. 83; order reversed in Case No. 82 and cause remanded for entry of judgment dismissing the complaint of Drake. No costs on appeal or motion for rehearing allowed to any party in either Case No. 82 or Case No. 83.

WILKIE, J. (*dissenting in part on motion for rehearing*). I concur with the majority's position as to the standard to be applied in determining whether or not the right-hand driver at an unguarded intersection has appropriately reduced his speed as he approached or crossed the intersection. I also agree with the majority, in view of the standard, that there was no evidence to support a jury finding of "unlawful speed" on the part of Drake, assuming such finding was made by the jury.

My disagreement is confined to the majority's treatment of the apportionment of negligence in which the jury assessed 60 percent of the fault to Drake and 40 percent to Holewinski. I would not disturb the jury's apportionment.

The jury's findings were contained in an ultimate-fact verdict. It found that Drake was "negligent in the operation of his automobile" and ascribed 60 percent of the total negligence thereto. The jury made no finding as to speed or any other individual item or items of negligence. It is entirely consistent with the jury's verdict that they based their 60 percent assessment of negligence upon Drake for his greater negligence as to lookout.

In *Granger v. Mutual Service Casualty Ins.* (1963), 19 Wis. (2d) 302, 120 N. W. (2d) 140, the court overturned a trial court's determination that the left-hand driver's negli-

gence (management and control) was at least equal to that of the right-hand driver (speed) and held that it was for the jury to determine which driver's negligence was the dominant cause of the accident. I see no reason for not following the same procedure here.

I am authorized to state that Mr. Justice DIETERICH and Mr. Justice GORDON join in this opinion.