CHAPMAN, Appellant, v. KEEFE and another, individually and d/b/a KEEFE BROTHERS TRUCKING, and another, Respondents.

*November 29—December 22, 1967.*

318

For the appellant there was a brief by *Gaylord & Lindsay* of River Falls, and oral argument by *Robert W. Lindsay*.

For the respondents there was a brief by *Gwin, Fetzner & Richards* of Hudson, and oral argument by *John W. Fetzner*.

CONNOR T. HANSEN, J.

(1). Death of trial judge before motions after verdict.

The plaintiff urges that by reason of the death of the trial judge after trial and before motions after verdict were heard, this court should review the findings of the jury and determine if their verdict was contrary to the great weight and clear preponderance of the evidence.

In the case before us, there was no motion for a new trial based upon the inability of the trial judge to hear motions after verdict. However, apparently in lieu thereof, the following stipulation was signed by counsel for both parties:

"It is hereby stipulated and agreed, by and between the parties hereto, by their respective attorneys, that Hon. Lawrence P. Gherty, the duly appointed Circuit Judge for Pierce County, Wisconsin, shall hear and decide the Motions After Verdict heretofore filed in this action, that any irregularity with respect to procedure in having the successor to the deceased trial judge hear and decide said motions are hereby expressly waived by the parties through their respective attorneys, and that an order to this effect shall be entered."

We do not agree with the contention of the plaintiff, and conclude that this verdict should be reviewed under the well-established rule that when a verdict is attacked it will be sustained if there is any credible evidence under any reasonable view that supports such verdict. *Bleyer v. Gross* (1963), 19 Wis. 2d 305, 120 N. W. 2d 156; *Wanserski v. State Farm Mut. Automobile Ins. Co.* (1964), 23 Wis. 2d 368, 127 N. W. 2d 264.

The jury found the plaintiff 70 percent negligent and the defendant 30 percent negligent. Comparison of negligence is peculiarly within the province of the jury, *Hadjenian v. Sears, Roebuck & Co.* (1958), 4 Wis. 2d 298, 303, 90 N. W. 2d 786, and we are not prepared to say as a matter of law, that the causal negligence of the plaintiff was equal to or exceeded that of the defendant. *Lawver v. Park Falls* (1967), 35 Wis. 2d 308, 151 N. W. 2d 68.

(2). New trial in the interests of justice.

It appears to us probable, however, on our review of the record, that the apportionment of 70 percent of the causal negligence to plaintiff Chapman, does represent a miscarriage of justice, and we, therefore, as a matter of discretion, order a new trial. Sec. 251.09, Stats. Since there is to be a new trial, we discuss only such parts of the evidence as necessary to indicate the reason for our action.

Throughout the entire record there are prejudicial references to the NFO activity, which tend to exonerate defendant's actions and, in effect, shift the negligence

consideration away from the defendant to an admittedly unjoined third party, the NFO.

We agree with counsel for defendant, that it is essential and proper for him to include in his *voir dire* examination general questions of the jury panel with respect to the National Farmers Organization, or NFO activities. However, having accomplished this there is absolutely nothing in the record which in any way associates the plaintiff with that organization. A distance of approximately 3,000 feet is covered from the time both drivers observed each other until the collision and for the last 2,000 feet of this distance there was a double yellow line in the center of the highway; the defendant admittedly knew the significance of the double yellow line.

On cross-examination of the plaintiff, and over repeated objections by counsel for the plaintiff which were sustained by the court, the counsel for defendant persisted in asking questions about NFO activities. A group of approximately 15 cars or pickups were at the scene almost immediately after the accident. Testimony was admitted that some of the occupants of those vehicles opened the back of the defendant's truck and let the cattle out. A photograph of the end of defendant's truck, depicting the latch, was admitted into evidence, as was a photograph intending to show that the valve stem on one of the tires on defendant's truck had been cut off. The plaintiff was asked the following question:

"And you know and I know that this was the group that were either harassing or chasing Mr. Keefe, isn't that right?"

Also, in response to an objection by the plaintiff's counsel, counsel for defendant stated:

"It's a fact, Mr. Lindsay [counsel for plaintiff], that we all know what happened. You know and I know."

We state only the above few examples of the type of questioning that permeates the record.

The following comment was also included in the closing argument of counsel for defendant:

"Now then the next thing, you will recall as John Keefe came down the highway, Chapman testified he thought one of these cars passed Keefe. We do not know where this car went, *but all of a sudden there were fifteen cars right there, and you know and I know what was occurring.*" (Emphasis added.)

"So I think you must consider the position of John Keefe as he was coming down that highway with cars around him, about him, behind him, throwing nails out. Then what did Mr. Chapman do, or what could he have done to eliminate the happening of an accident?"

This court has traditionally held that it is error sufficient to reverse a judgment for counsel, against objection, to state facts pertinent to the issue but not in evidence, or to assume arguendo such facts to be in the case when they were not, and also to impute facts not pertinent to the issue, but calculated to prejudice the case. *Brown v. Swineford* (1878), 44 Wis. 282, 293; *Horgen v. Chaseburg State Bank* (1938), 227 Wis. 510, 279 N. W. 33; *DeRousseau v. Chicago, St. P., M. & O. R. R.* (1949), 256 Wis. 19, 39 N. W. 2d 764.

The jury must have found plaintiff Chapman negligent on the basis of disputed testimony concerning the rearview mirror, whether or not his directional signal was on, and that he had not intended to turn left on Pearl street, thereby raising the inference of a quick turn.

However, this when considered with the actions of the defendant, dictate that the negligence apportionment was distinctly distorted. The accident occurred in the eastbound (southerly) lane of traffic where there is a double yellow line in the center of the road; the defendant failed to give any audible warning; and he may have been following more closely than was reasonable and

prudent. Defendant had an unobstructed daylight view of the plaintiff's vehicle for 3,000 feet before the accident. He testified plaintiff made his turn when he was approximately 50 feet in front of defendant, yet the skid marks from defendant's truck are from 50 to 75 feet long up to the point of impact.

The apportionment of 70 percent of the causal negligence to plaintiff very strongly suggests to us that there remained in the minds of the jury a prejudicial influence from the repeated references to the activities of the farm organization. *Korleski v. Lane* (1960), 10 Wis. 2d 163, 102 N. W. 2d 234.

Also, it is considered that the disparity in the quantum of negligence chargeable to each of the drivers as found by the jury, under the facts and circumstances of this case, is such as to require the exercise of the discretion conferred upon the court by sec. 251.09, Stats. *O'Leary v. Buhrow* (1946), 249 Wis. 559, 25 N. W. 2d 449.

The issue of damages was raised by the plaintiff in motions after verdict; the trial court, in ruling on the motions, found that damages awarded were conservative but supported by the evidence. The question of the sufficiency of the damages has not been raised on this appeal.

Consequently, we exercise our discretion to order a new trial on issues of negligence, causation and apportionment. The new trial will not include the element of damages for the reason the issue was not raised on this appeal.

*By the Court.*—Judgment reversed and new trial granted on all issues excepting damages.